**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARILUZ TICLLACURI NATEROS,<br><br>  Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESNUT, et al.,<br><br>  Respondents. | Case No. 1:25-cv-01950-JLT-SKO (HC)<br><br>ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION[1]; GRANTING THE PRELIMINARY INJUNCTION IN PART; AND REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE<br><br>(Doc. 3, 13)[2] |

## I.  INTRODUCTION

Before the Court for decision is Mariluz Ticllacuri Nateros' request for a temporary restraining order (Doc. 3), filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging her ongoing detention. (Doc. 1.) Having evaluated the TRO request, Respondents' opposition, (Doc. 8) and Petitioner's reply (Doc. 9), the Court converts the matter into a motion for preliminary injunction, **GRANTS** that motion **IN PART**, and **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

---

[1] Upon the agreement of the parties, the Court converts the motion for temporary restraining order into one for preliminary injunction. (Doc. 8 at 1, fn. 1; Doc. 9 at 9.) The parties have also affirmatively declined an evidentiary hearing. (*Id*.)

[2] On January 20, 2026, Petitioner filed an Amended Motion for TRO. (Doc. 13.) The Court has examined the submission and finds that the newly submitted material does not alter the outcome of the instant order. Accordingly, the Court refers to the assigned magistrate judge the issue of whether Petitioner's amended TRO and corresponding amended petition for a writ of habeas corpus (Doc. 10) were filed in compliance with Rule 15(c) of the Federal Rules of Civil Procedure.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen of Peru who was apprehended by U.S. Customs and Border Patrol after crossing the border near San Luis, Arizona, on April 21, 2024. (Doc. 3 at 3; Doc. 8 at 2.) After being briefly detained, CBP issued Petitioner a Notice to Appear (Form I-862) charging her pursuant to § 212(a)(7)(A)(i)(I) of the Immigration Nationality Act, as an alien present in the United States without being admitted or paroled by an immigration officer. (Doc. 8-1 at 7.) Petitioner then was released from custody on her own recognizance on April 22, 2024, and was enrolled in the Alternatives to Detention ("ATD") program, which imposed various conditions of release including "report[ing] for any hearing or interview" by the Department of Homeland Security. (*Id*.) In releasing Petitioner on her own recognizance, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). DHS served Petitioner with a NTA in Immigration Court on July 22, 2024 in Boston, Massachusetts. (Doc. 3 at 3.) Petitioner presented herself on July 22, 2024 at Immigration Court, and contends that since arriving in the United States, she has attended every required immigration appointment. (*Id*.) She was subsequently scheduled for Immigration Court on December 18, 2026 in Boston, Massachusetts. (*Id*.)

After entering the United States, she first came to live in Boston, Massachusetts, and then later moved to Bakersfield, California, where she currently resides with her significant other. (*Id*.)[3] In April of 2025, Petitioner obtained authorization to legally work in the United States and worked in agriculture prior to her detention. (*Id*.) Petitioner maintained a clean criminal record, developed strong connections to the community, and filed an asylum application. (*Id*.) She also suffers from an unspecified health issue which requires her to take antibiotics. (*Id*. at 9.)

---

[3] Members of Petitioner's family, including her two daughters, currently live in Boston, Massachusetts. (Doc. 3 at 3.) Both of Petitioner's children are applying for Special Immigrant Juvenile Status, and Petitioner plans on returning to Boston when released to pursue SIJS for her children and asylum for herself. (*Id*. at 4.)

On or about November 14, 2025, Petitioner reported to a routine check-in at the Immigration and Customs Enforcement Removal Center in Bakersfield, California, where she was arrested for failing to comply with ISAP reporting requirements. (*Id*. at 3.) ICE officials informed Petitioner that she was under arrest for failing to properly upload an ISAP photo on her phone. (*Id*.) According to exhibits provided by Respondents, Petitioner incurred at least ten documented ATD/ISAP violations in less than a year, including five missed biometric check-ins, three missed location updates, a missed in-person office visit, and a failed home visit. (Doc. 8-1 at 10.) Petitioner is currently detained at the California City Correctional Facility in California City, California.

The government opposes the issuance of preliminary injunctive relief and maintains that Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2). (*See generally* Doc. 8.)

### III.   LEGAL STANDARD

The standard governing the issuing of a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking a preliminary injunction must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Ctr. For Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'").

The party seeking a preliminary injunction has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding that the moving party has "the burden of persuasion"); *see also Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing

on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Id*. Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

## IV.   ANALYSIS

### A.   Likelihood of Success on the Merits

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues she is likely to succeed on her claim that Respondents violated her Fifth Amendment Due Process rights when she was detained without notice or provided a custody hearing before a neutral arbiter. (Doc. 3 at 7-15.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session, 872 F.3d 976*, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id*. at 693–94. "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Garro Pinchi v. Noem*, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Other courts, including this Court, have held similarly. *J.E.H.G. v. Chestnut*, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)).

In analyzing procedural due process claims such as this one, courts must first determine whether a protected liberty interest exists under the Due Process Clause. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989.) If a protected liberty interest is found to

1  exist, the court then must examine whether the procedures necessary to ensure that any
2  deprivation of that protected liberty interest accords with the Constitution. (*Id.*) To the extent
3  that Respondents substantively address Petitioner's due process argument, they deploy a blanket
4  assertion that Petitioner is an "applicant for admission" subject to mandatory detention under 8
5  U.S.C. § 1225(b)(2)(A) of the INA and therefore categorically ineligible for a bond hearing.
6  (Doc. 8 at 4-13.) Respondents further contend that Petitioner's prior release at the discretion of
7  DHS pursuant to 8 U.S.C. § 1226 "does not have the effect of having converted Petitioner's
8  presence in the United States into an 'admission.'" (*Id.*)

9  Although Petitioner's claim is ultimately constitutional in nature, it turns on whether
10 section 1225(b) or section 1226(a) justify Petitioner's re-detention. Courts nationwide, including
11 this one, have overwhelmingly rejected Respondents' new legal position and found the DHS
12 policy unlawful. *See, e.g.*, *Ortiz Donis v. Chestnut*, 1:25-CV-01228-JLT, 2025 WL 2879514 at
13 *3–6 (E.D. Cal. Oct. 9, 2025); *see also*, *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL
14 3265446 (E.D. Cal. Nov. 24, 2025); *Hortua v. Chestnut*, et al., No. 1:25-cv-01670-TLN-JDP,
15 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582
16 (LAK), ––– F.Supp.3d –––, –––, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)
17 (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in
18 about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*,
19 No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases);
20 *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC),
21 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

22 Even assuming Respondents are correct that § 1225(b) is the applicable detention
23 authority for all "applicants for admission," Respondents fail to meaningfully contend with the
24 liberty interest created by the fact that the Petitioner in this case was released on recognizance in
25 April 2024 before the current manifestation of this interpretation. Thus, the Court must evaluate
26 the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine
27 whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to
28 protect the liberty interest at issue. *Pinchi*, 2025 WL 2084921at *3. In *Mathews*, the Court

1  determined the following:

2
3        [O]ur prior decisions indicate that identification of the specific
         dictates of due process generally requires consideration of three
4        distinct factors: First, the private interest that will be affected by the
         official action; second, the risk of an erroneous deprivation of such
5        interest through the procedures used, and the probable value, if any,
         of additional or substitute procedural safeguards; and finally, the
6        Government's interest, including the function involved and the
         fiscal and administrative burdens that the additional or substitute
7        procedural requirement would entail.

8  During her more than a year and a half on parole, Petitioner build a life outside detention, while

9  under the terms of that parole. Petitioner has a substantial private interest in being out of custody

10 and his detention denies her that liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)

11 ("Freedom from imprisonment—from government custody, detention, or other forms of physical

12 restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

13         In *Rocha Chavarria v. Chestnut*, the Court recently found that the Petitioner had

14 demonstrated a likelihood of success on the merits of his procedural due process claim because

15 (1) he had demonstrated a liberty interest in his continued release, and (2) that his continued

16 detention without written notice and a hearing was unlawful. *Rocha Chavarria v. Chestnut*, No.

17 1:25-cv-1755-DAD-AC, 2025 WL 3533606, *5 (E.D. Cal. Dec. 9, 2025). The court ordered the

18 immediate release of Petitioner who allegedly "incurred compliance violations" that were not

19 identified and where respondents did not suggest the alleged violations were the reason for

20 petitioner's re-detention. (*Id.*) *See also, Gholami v. Chestnut*, No. 1:25-CV-01644-DAD-DMC

21 (HC), 2025 WL 3640675 (E.D. Cal. Dec. 16, 2025) (construing Respondent's non-

22 responsiveness and unsubstantiated allegations of release violations as concessions that the

23 present matter and *Rocha Chavarria* were not substantively distinguishable).

24         Unlike the Respondents in *Rocha Chavarria* and *Bernal*[4], the attached exhibits to the

25 opposition (Doc. 8-1 at 10) and Petitioner's admitted failure to comply to make timely check-ins,

26

27 [4]In *Bernal*, the court found that Petitioner was likely in compliance with the conditions of her release -- preserving the full force of her liberty interest -- given that Respondents provided "no detail about the restrictions – if any – required by [the ATD] program," and nothing regarding the timing or substance of Petitioner's alleged release
28 violations. No. 25-CV-09772-RS, 2025 WL 3281422, at *5 (N.D. Cal. Nov. 25, 2025)

constitute sufficient, independent verifiable supporting documentation regarding the quantity, nature and substance of Petitioner's alleged ISAP/ATD violations and rationale for re-arresting her. *C.f. C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (finding "key factual assertions" made by Respondents were not adequately supported when the deportation officer did not state the "basis for personal knowledge for the facts claimed in his declaration.").

Nevertheless, the Court finds there is at least some risk of erroneous deprivation under the present circumstances, with the record suggesting several reasons why Petitioner's detention may not be justified. First, in 2024, in releasing her on parole, DHS necessarily concluded that Petitioner was not a flight risk or danger to the community. *Noori v. LaRose, et al.,* 2025 WL 2800149, at 13* (S.D. Cal. Oct. 1, 2025) (In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'" *Saravia v. Sessions,* 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions,* 905 F.3d 1137 (9th Cir. 2018)."

The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed

1  with the petitioner that ICE's post hoc explanation that violations warranted his detention was
2  pretextual, given that ICE first became aware of petitioner's alleged violations a few hours
3  before his immigration hearing, DHS did not raise those violations at the hearing or argue the
4  petitioner should be detained for any reason, and the petitioner was then provided multiple,
5  inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO
6  (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction
7  sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate
8  release of in immigration detainee who had been in compliance with his conditions of release,
9  even though he had incurred a misdemeanor arrest while on parole, in part because no charges
10 were ever filed.

    In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No.
1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's
records indicated numerous violations. Though Martinez Hernandez offered explanations for the
violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance
upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the
facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation
hearing would have been impracticable and/or would have motivated his flight."). As this Court
noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*. Finally, as to the third *Mathews* factor, this Court concludes that the government's interest in detaining Petitioner without proper process is slight. "Since respondents did not engage with Petitioner's due process arguments, they have not provided the court with any information

1  regarding the burden on the government." *Rocha Chavarria,* 2025 WL 3533606, at *4. In sum,
2  sum, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits
3  on his due process claim.

### B.  Remaining Preliminary Injunction Factors

The remaining preliminary injunction factors—irreparable harm, the balance of equities, and the public interest—decidedly weigh in favor of Petitioner. "[I]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). By successfully demonstrating that Respondents lack a basis to detain her, Petitioner has succeeded in showing irreparable harm.

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor. While the government has a compelling interest in enforcing the immigration laws, granting relief to Petitioner will not seriously impinge its ability to do so. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Moreover, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

### V.  CONCLUSION AND ORDER

1. Petitioner's Motion for Temporary Restraining Order (Doc. 8) is converted to a Motion for Preliminary Injunction, and it is **GRANTED in PART.**

2. Petitioner **SHALL** be provided a **substantive** bond hearing **no later than February 2, 2026** at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released.

3. At any such hearing, the Government **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner **SHALL** be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. See *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. See, e.g., *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

5. The parties are directed to meet and confer no later than 14 days from the date of the entry of this order, and, if possible, submit a joint proposed briefing schedule discussing the abeyance of further proceedings on the merits pending the 9th Circuit Appeal of *Rodriguez Vazquez v. Bostock,* 779 F.Supp.3d 1239 (W.D. Wash. 2025). If the parties are unable to agree to a joint proposed briefing schedule, the Court will rule on the request.

6. The government may file a further brief on the merits of the habeas petition within 45 days. Alternatively, as soon as it can within that 30-day period, the government may file a notice that it does not intend to file further briefing. If the government files an additional brief, Petitioner may file a further brief within 30 days thereafter.

5. The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated: **January 22, 2026**

_____
UNITED STATES DISTRICT JUDGE